## SANCHEZ et al. v. DEERING.

(District Court, S. D. Florida. March 28, 1923.)

### No. 181.

1. **Equity** ⬳70—**Laches; knowledge imputable to successor in title.**

Complainants, claiming real estate through a person deceased, are charged with knowledge of facts possessed by him while he held the title, and are chargeable with laches in asserting their rights, if laches could have been imputed to him had he lived and retained the title.

2. **Trusts** ⬳365(2)—**Complainants held barred by laches from having trust declared.**

Where complainants' predecessor in title had knowledge before his death, and while he held the title of the adverse claim of the defendant to land a delay of 20 years by complainants before commencing suit *held* such laches as to bar their suit to declare a trust in the land.

In Equity. Suit by E. C. F. Sanchez and others against James Deering. On motion to dismiss bill. Granted.

Bill alleges:

January 18, 1805, Pedro Fornells was granted by Gov. White 175 acres on Key Biscayne. Under Spanish law a survey must have been made, followed by a royal title to separate the land from the public domain. No survey was made and no royal title was issued prior to the cession of the Floridas to the United States.

Pedro Fornells, May 19, 1793, married Mariana Tudorina, widow of Marcus Andreu, from which marriage one daughter was born, Antonia Porsila, or Porsala. Pedro Fornells died intestate, leaving as his only heir at law his said daughter. Mariana Tudorina had by Marcus Andreu, her former husband, a son named Rafael Andreu, born July 7, 1786.

February 22, 1819, treaty of cession made between Spain and the United States (8 Stat. 252), wherein all grants made prior to January 24, 1818, by Spanish authority, were ratified and confirmed to the persons in possession of the lands. Delivery to the United States of the territory of East Florida was made July 10, 1821.

Act March 3, 1823 (3 Stat. 754), authorized appointment of three commissioners to ascertain titles and claims in East Florida, with powers conferred by the Act of May 8, 1822 (3 Stat. 709). Section 5 of last-named act empowered the confirmation of claims to land arising under grants, concessions, and orders by survey, if satisfied said claims be correct and valid.

Under authority of the act (section 3), the commissioners formulated rules of procedure, etc. (Hamilton, one of the commissioners, refused to act for reasons assigned.) That Mary Ann Davis, wife of Wm. Goodwin Davis, a deputy marshal attending the commission, on July 23, 1824, presented her memorial, claiming the title to the grant under deed from Rafael Andreu; that it was possible for Mary Ann Davis to have presented a legal deraignment of title; that if, under the law, the mother of Andreu had ganancial rights, such deraignment would have shown the interest of Andreu as a half-brother of Antonia Porsila, or Porsala, and that they were tenants in common; that the claim of Mary Ann Davis was supported by false affidavits, when legal evidence of the true facts existed and was available; that on June 30, 1827, Mary Ann Davis and her husband conveyed to the United States three acres upon which a lighthouse had been erected; that the lands of the grant, except the above three acres, up to 1850 remained and yet remains wild, unoccupied, and not in the actual occupancy of any one claiming title thereto; that on the 6th of May, 1843, Antonia Porsila and her children conveyed an undivided half interest in the grant to Venancio Sanchez for $400, with deed recorded in

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Monroe county May 25, 1843, and in St. Johns county June 10, 1843, where the deed from Andreu to Davis was recorded.

Said Sanchez, after receiving the deed to an undivided half interest, openly claimed title and subsequently entered into an agreement with Davis for the settlement of the grant sale of lots, etc. In 1847, under the direction of the surveyor general, the grant was surveyed in township 55 south, of range 42 east on Key Biscayne; from 1847 to 1892 said Sanchez had undisputed ownership of an undivided half of the lands so surveyed and was in constructive possession of the whole of said lands. On August 3, 1892, made attempts to notify Edward Davis, son of Mary Ann Davis, deceased, of his intention to procure a patent to said lands and for information. June 3, 1893, Waters S. Davis procured conveyances from the heirs of Mary Ann Davis of their interests in the grant. That this interest was an undivided interest; that Waters S. Davis visited St. Augustine, and proposed to Sanchez to buy or sell, but the proposition was not accepted, and August 10, 1893, applied for a patent unknown to said Sanchez, and procured the issuance of same to Mary Ann Davis in the usual form.

In 1896 Sanchez filed his protest against the issuance of said patent, which was overruled by the Commissioner of the General Land Office, which ruling was sustained by the Secretary of the Interior in 1898, all of which matters appear in the records of the General Land Office, and constitute constructive notice.

The bill then pleads the riparian act of 1856 of the Florida Legislature (chapter 791), claiming said act vested full title to the land covered by the water, claiming to be tenants in common with the heirs of Pedro Fornells, to all the lands except the three-acre tract conveyed to the United States, and as to that to be a tenant in common with the United States; that in 1903 Davis obtained conveyance of the three-acre tract from the United States.

In 1899 Venancio Sanchez died intestate, leaving his son, Wm. J. Sanchez, his sole heir at law. June 17, 1895, Sanchez conveyed to his brother's children one-half undivided interest of his estate in these lands (riparian rights not included) recorded in public records of Dade county June 17, 1895.

June 28, 1913, Waters S. Smith conveyed the entire estate to James Deering, which lands were not inclosed and were unoccupied; that Deering has never personally had any possession of said land; that he has a keeper residing somewhere on Key Biscayne, but never had taken exclusive possession by cultivation or other acts of adverse possession as set forth in laws of Florida; that the constructive possession of Sanchez, and through him to complainants, has been continuous.

The bill then proceeds to allege that the complainants having been vested with an undivided half, yet under the law as existing at the time of the death of Pedro Fornells his daughter inherited his entire estate; that the United States held the bare legal title in trust for the persons beneficially interested, and by the patent and the conveyance to Mary Ann Smith, and parties holding under her occupy the position of trustees for the three complainants; that no money has been spent for improvements upon the land, except the three acres, but defendant has paid the annual taxes, which complainants offer to reimburse to the extent of one-half.

The bill then states that defendant will allege that the claim is stale, and sets up matters to refute such claim as follows (the particular facts of this case): That defendant is not an innocent purchaser for value; that the confirmation of the claim to Mary Ann Davis in no way affects the rights of Antonia Porsila, or of Sanchez, her grantee; that the first move to have patent issued was made by Sanchez in 1892; that Sanchez did all he could do to prevent the issuance of the patent to Mary Ann Davis; that the Commissioner of the General Land Office ignored Act Feb. 8, 1827 (4 Stat. 202), and his act did not adversely affect the rights of Sanchez; that patentee held the patented lands as trustee; that Waters Smith Davis, after procuring the patent, took no steps to oust complainants from the constructive possession; that complainants had no actual knowledge that Davis had conveyed the title until immediately prior to the institution of this suit; that defendant has not

in any manner ousted complainants of their constructive possession; neither Davis nor defendant show acts of possession inconsistent with or exclusive of the rights of complainants as tenants in common, nor bring any such claim to the knowledge of complainants; that shortly before the issuance of said patent Davis acknowledged Sanchez's right to an undivided half interest in said lands, and defendant has not taken such possession of said lands as is inconsistent with the rights of complainants as cotenants; that actual knowledge of the claim of complainants and their ancestor and grantor, and of the facts and decisions in the files of the Commissioner of the General Land Office relating to said land and of the files in the surveyor general's office; that defendant had constructive notice of all said files and records, and of the record of the deed to Sanchez; that in 1843 Key Biscayne was in Monroe county, where the deed to Sanchez was recorded.

Complainants and their ancestor and grantor were not guilty of laches, because, between 1843 and 1860 Sanchez undertook to procure certain persons to settle said land; that prior to the issuance of the patent Sanchez made diligent effort to find his grantor and procure legal evidence of her relationship to Pedro Fornells; that he made inquiry of a person of the Andreu family for facts to prove the relationship of his grantor to Rafael Andreu; that search was made in the church records at St. Augustine and Havana for facts to prove the relationship; that not until July, 1919, was it discovered that the index to the Spanish Archives made by Antonio Alvarez was in existence; and from this index he was enabled to procure the proofs to establish the relationship of his grantor to Pedro Fornells.

The prayer is that the defendant may be decreed to hold an undivided half of the 175 acres as trustee for the complainants as their interests may appear; that the court will construe chapter 791, Laws of Florida (the riparian act), and defendant make deed to W. J. Sanchez.

W. W. Dewhurst, of St. Augustine, Fla., for complainants.
Hudson, Wolfe & Cason, of Miami, Fla., for defendant.

CALL, District Judge. In this cause the bill of complaint was filed April 7, 1920, praying that the defendant be decreed to hold the legal title to an undivided half interest in the real estate described in the bill as the trustee for the complainants and for other relief. The basis of the suit is a grant by Gov. White, of 175 acres of land upon Key Biscayne (Key Buskun) in Dade county, Florida, while the Floridas were under the dominion of Spain.

The bill shows the grant to Pedro Fornells on January 18, 1805; the memorial of Mary Ann Davis to the commissioners for confirmation of the grant July 23, 1824, claiming title through a deed from Rafael Andreu, a stepson of Pedro Fornells, executed July 12, 1824. The action of the commissioners confirming this grant to Mary Ann Davis was approved and confirmed by Act of Congress February 8, 1827 (4 Stat. 202). The survey of the surveyor general was made in 1847, segregating the 175 acres from the public domain. On June 30, 1827, Mary Ann Davis and her husband deeded to the United States three acres of the tract on which the Cape Florida lighthouse was built. This lighthouse was subsequently abandoned, and in 1903 the three acres was conveyed to Waters S. Davis. June 3, 1893, the heirs of Mary Ann Davis quitclaimed their interest to Waters S. Davis. April 23, 1896, patent for these lands was issued to Mary Ann Davis, the confirmee, but was not delivered until 1898 on account of a protest filed by Venancio Sanchez, which protest was over-

ruled by the surveyor general, the Land Commissioner, and the Secretary of the Interior.

June 28, 1913, Waters S. Davis, one of the heirs of Mary Ann Davis, conveyed these lands to the defendant. The complainants deraign their title to one-half undivided interest in and to said lands through a deed executed by the attorney in fact of Dona Porsila de Barrosa, widow, and daughter of Pedro Fornells, and her children, residents of Cuba, to Venancio Sanchez, dated May 26, 1843.

The bill further alleges certain transactions between Sanchez and the husband of Mary Ann Davis, looking to the division of the land into lots and settlement of same, which were not consummated, as well as a conference between Sanchez and Waters S. Davis looking to a buy or sell proposition, which resulted in failure to arrive at an agreement; the subsequent application of Davis for the patent, and the protest filed by Sanchez against the issuance of same, and the proceedings thereunder; and the issuance of the patent in 1898 as above noted. A number of allegations are made to show that neither the complainants, nor their predecessor in title, were guilty of laches in asserting their claims in the courts.

The defendant moved to dismiss the bill on the grounds that the bill showed that complainants were guilty of laches and the action ought not to be maintained in equity and good conscience.

The eighth article of the Treaty by which the Floridas were ceded to the United States, as copied in the case of United States v. Percheman, 7 Pet. (32 U. S.) 87, 88, 8 L. Ed. 604, is as follows:

"All the grants of land made before the 24th of January, 1818, by his Catholic majesty or by his lawful authorities in the said territories ceded by his majesty to the United States [the English portion says, "shall be ratified and confirmed;" the Spanish, "shall remain ratified and confirmed"] to the persons in possession of the lands to the same extent that the same grants would be valid if the territories had remained under the dominion of his Catholic majesty." 8 Stat. 258.

Where the lands granted had been officially surveyed and segregated from the public domain prior to the cession, the title had vested, and, as I understand the language of Chief Justice Marshall in U. S. v. Percheman, supra, the United States took no title to same by the treaty of cession. If, however, the grant was of a certain number of acres of land, as was the case in the grant involved in this case, undefined and incapable of identification, then title became perfect only when the granted land was surveyed, thus segregating it from the public domain, and a patent issued. Langdeau v. Hanes, 21 Wall. 531, 22 L. Ed. 606.

I am of opinion, therefore, that it is from the issuance of the patent that the title became perfect in this case, although the survey was made and approved in 1847. It is therefore from 1896 or 1898 that I will consider the question of laches.

The bill shows that Venancio Sanchez lived until 1899, something like a year after his protest against the issuance of the patent had been overruled by the Secretary of the Interior, and when he recognized that Davis was claiming the whole acreage.. That no steps were taken by him to assert his claim to the undivided half interest, because of

the difficulty in discovering record evidence to establish the title of his grantors, I deduce from the allegations of the bill. He was charged with notice that in 1893 the grantor of the defendant had received a conveyance of the three-acre tract, theretofore conveyed to the United States by his predecessor in title. These complainants must be charged with notice that in 1913 this defendant received his conveyance to these lands, the entire title, not a half interest, and yet no steps taken legally to assert their claim.

It does not seem to me that, because the defendant may be charged with notice of the claims of complainant, that would excuse the delay from 1896 or 1898 to 1920 by the complainants in asserting the claim made in the bill. Venancio Sanchez, at the time he made his protest to the Land Department against the issuance of the patent at the instance of Davis, knew that Davis' claim was antagonistic to his.

[1, 2] Any laches chargeable to their predecessor in title to the complainants is chargeable to them, and their right to maintain the suit must be tested by the right of their predecessor, had he remained alive and retained the title; and had he remained alive and waited until 1920 to assert his rights against this defendant, certainly a court of equity would not entertain the suit. I am of opinion that the defendant occupies the position of a bona fide purchaser for value, and that the complainants are barred by their laches from maintaining this suit.

A decree will be entered, granting the motion to dismiss the bill.