## SANCHEZ et al. v. DEERING.

(Circuit Court of Appeals, Fifth Circuit.   March 18, 1924.)

No. 4252.

1. **Public lands** ⊜⟶211—**Act of Congress confirming Spanish grant in Florida held to vest title in grantee from date of subsequent survey.**

Act Feb. 8, 1827, confirming title to a grant made by Spanish authority of land in Florida, of undefined boundary, *held* to vest the title in the confirmee from the date when the land was surveyed in 1847; the patent subsequently issued being merely documentary evidence of such title, relating back to date of survey.

2. **Trusts** ⊜⟶365(2)—**Complainants held barred by laches from enforcing trust in lands.**

Where claimant of half interest in land, title to which had been confirmed in another, had knowledge of such confirmation, that knowledge was imputable to his successors in title, and delay of 73 years after the legal title became vested in the adverse claimant, and, until after all persons having knowledge of the facts were dead, before bringing a suit to establish a trust, *held* such laches as to bar the right to relief.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Suit in equity by E. C. F. Sanchez and others against James Deering. Decree for defendant, and complainants appeal.   Affirmed.

For opinion below, see 288 Fed. 412.

William W. Dewhurst, of St. Augustine, Fla., for appellants.

F. M. Hudson and F. W. Cason, both of Miami, Fla., for appellee.

Before WALKER and BRYAN, Circuit Judges.

BRYAN, Circuit Judge.   In 1913 the appellee acquired the legal title to 175 acres of land on Key Biscayne, in Dade county, Fla.   In 1920 the appellants filed their bill to impress this title with a trust in their favor to the extent of an undivided half interest.   The District Court, upon appellee's motion, dismissed the bill, on the ground that the relief sought was barred by laches.   The opinion of the District Judge is reported in 288 Fed. 412.

It is preceded by a statement of the contents of the bill, which is correct as far as it goes, except that, where the names "Waters S. Smith" and "Mary Ann Smith" occur, it was obviously the intention to refer to Waters Smith Davis and Mary Ann Davis.   The bill also contains averments, which appear to us to be material, to the effect that about 1840 the husband of Mary Ann Davis sought to interest Venancio Sanchez in developing Key Biscayne, after which said Sanchez discovered that Mrs. Davis owned only an undivided half interest; that he then learned, in some way not disclosed, that the owners of the other half interest lived in Cuba, and soon thereafter went to Havana, met Antonia Porsila, and purchased her half interest; that Sanchez was acquainted with Raphael Andreu, who lived in St. Augustine; and that Mary Ann Davis died about the year 1885.

[1] July 23, 1824, Mary Ann Davis made application to the commissioners appointed pursuant to the Acts of Congress of May 8, 1822

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(3 Stat. 709), and March 3, 1823 (3 Stat. 754), for confirmation to her of the grant originally made to Pedro Fornells. In support of this application she represented that she had purchased from Raphael Andreu, the son and heir of Fornells' widow and heir. December 21, 1824, the commissioners confirmed the grant to her (4 American State Papers [Duff Green Edition] 161, 218, 275), and January 1, 1825, reported their action to the Secretary of the Treasury, who February 21, 1825, referred the report to Congress. Id. 83, 157, 169. The Act of Congress of February 8, 1827 (4 Stat. 202), confirmed all claims "contained in the reports, abstracts, and opinions, of said commissioners, which have been transmitted to the Secretary of the Treasury, according to law, and referred by him to Congress, on the twenty-first of February, eighteen hundred and twenty-five." Section 1. In view of these proceedings and this confirmatory act of Congress, we are of opinion that the legal title vested in Mary Ann Davis in 1847, when the official survey was made, and did not remain in the United States until issuance of the patent in 1898. In Langdeau v. Hanes, 21 Wall. 521, 22 L. Ed. 606, it is said:

"A legislative confirmation of a claim to land is a recognition of the validity of such claim, and operates as effectually as a grant or quitclaim from the government. 'A confirmation,' says Sheppard in his Touchstone of Common Assurances, 'is the conveyance of an estate, or right, that one hath in or unto lands of tenements, to another that hath the possession thereof, or some estate therein, whereby a voidable estate is made sure and unavoidable, or whereby a particular estate is increased and enlarged.' If the claim be to land with defined boundaries, or capable of identification, the legislative confirmation perfects the title to the particular tract, and a subsequent patent is only documentary evidence of that title. If the claim be to quantity, and not to a specific tract capable of identification, a segregation by survey will be required, and the confirmation will then immediately attach the title to the land segregated."

[2] It is true that this case does not relate to land ceded by Spain to the United States under the Treaty of 1819 (8 Stat. 252); but the same rule is applied to a Spanish grant in Wilson Cypress Co. v. Del Pozo, 236 U. S. 635, 35 Sup. Ct. 446, 59 L. Ed. 758. The failure to assert whatever interest the appellants had continued for 50 years prior to the issuance of the patent, and in considering the question of laches, the period of time involved extends over 73 years, or from 1847, the date of the survey, to 1920, when the bill was filed.

Before Venancio Sanchez, under whom the appellants claim, obtained his deed in 1843 from Antonia Porsila, who it is asserted inherited from her father, Pedro Fornells, a half interest in the land in dispute, he knew that Mary Ann Davis was claiming to be the owner in her own right of the entire interest in the property. The bill does not aver that Mary Ann Davis ever acknowledged or recognized that she held the title to a half interest in trust. The utmost that is asserted in this connection is that her husband did not dispute the claim of Venancio Sanchez; but such evidence is inadmissible to bind the estate of a deceased person. The averment that Waters S. Davis offered to sell to Venancio Sanchez, or to buy from him, when taken in connection with the averment that immediately after his proposition was declined he applied for a patent, and resisted the claim of an adverse interest, is not sufficient to support the inference that he acknowledged or recognized that he held any part of the title as trustee. Venancio Sanchez

knew Antonia Porsila, Mary Ann Davis, and Raphael Andreu, all of whom were living when he purchased his adverse claim, which, if valid, should have been established while the witnesses who knew about it were living. Mary Ann Davis lived until 1885, and it was not until long after her death that her title was contested.

The long delay and the death of material witnesses appear on the face of the bill, and, if they constitute laches, the bill may be dismissed, without requiring an answer. The appellants realize this, and set up as excuses the constructive notice afforded by the recorded deed from Venancio Sanchez to them, and their inability to trace the relationship between Antonia Porsila and Raphael Andreu until discovery in 1919 of an index to the Spanish Archives. The recorded deed to the appellants would only have charged the appellee with notice of a claim which apparently had been abandoned for a period of 50 years, and the index would only have furnished information already possessed by Venancio Sanchez at the time he purchased the claim now sought to be enforced. The laches is made up, therefore, of a delay of 73 years and the loss of evidence, by the death of witnesses, which cannot in the nature of things be now available to the appellee. We are of opinion that it is too late now to enter into the merits of a claim of title which could have been asserted, and enforced if good, and rejected if bad, while the witnesses who knew about it were living and could have testified with reference to it.

The decree is affirmed.